UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SOKUN T. CHEA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,[1]<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | No. ED CV 06-918-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 24, 2006, seeking review of the Commissioner's denial of her application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 14, 2006, and October 10, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 18, 2007, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 1, 2007.

## II.

## **BACKGROUND**

Plaintiff was born on April 3, 1960. [Administrative Record ("AR") at 122.] She completed four years of school in Cambodia and has past work experience as, among other things, a sewer and a general laborer in a donut shop. [AR at 114, 119.]

On May 15, 2002, plaintiff protectively filed her application for Supplemental Security Income, alleging an onset of disability on February 1, 2002, due to diabetes, leg and foot pain, high blood pressure, headaches, stress, and depression. [AR at 94-97, 113, 122.] After a denial of her application, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 46-50, 51.] The hearing was held on September 26, 2003, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 396-403.] A Cambodian interpreter was also present. [AR at 396.] On November 17, 2003, the ALJ determined that plaintiff was not disabled. [AR at 28-37.][2] Plaintiff requested review of the ALJ's decision, and on May 26, 2004, the Appeals Council remanded the case to the ALJ to give further consideration to the opinions of the treating and examining sources, obtain additional evidence concerning plaintiff's impairments, give further consideration to plaintiff's maximum residual functional capacity, and, if warranted, obtain evidence from a vocational expert. [AR at 64-66.]

The post-remand hearing was held on February 24, 2005, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 404-19.] Linda Chea, a witness for plaintiff, and Joseph Moore, a vocational expert, also testified. [Id.] A Cambodian interpreter was also present. [AR at 404.] On March 21, 2005, the ALJ determined that plaintiff was not disabled. [AR at 16-21.] When the Appeals Council denied review on July 14, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 5-9.]

---

[2] On December 19, 2003, plaintiff filed another application for Supplemental Security Income, which was denied initially and on reconsideration. [AR at 38-39, 71-74, 76-80, 108-10.] On remand, the Appeals Council found that its action with respect to the May 31, 2002, claim rendered the December 19, 2003, claim a "duplicate." [AR at 66.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. 20 C.F.R. § 416.920; Lester, 81 F.3d at 828 n.5. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability. [AR at 21.] At step two, the ALJ concluded that plaintiff had the medically determinable impairments of diabetes mellitus and hypertension. [Id.] The ALJ determined, however, that plaintiff did not have any impairment or combination of impairments that more than minimally limited her ability to perform basic work-related activities. [Id.] Accordingly, as plaintiff did not have a "severe" impairment, the ALJ concluded that plaintiff did not suffer from a "disability" as defined in the Social Security Act, and benefits were denied. [Id.]

4

# V.

# **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred in his consideration of: (1) the opinion of plaintiff's treating physician, Dr. Romeo D. Villar; (2) the opinion of plaintiff's treating physician, Dr. Norman Wong; (3) the evaluation of the consultative examiner, Divy K. Kikani; and (4) the severity of plaintiff's mental impairment. Joint Stipulation ("Joint Stip.") at 2. As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

## A.  OPINION OF DR. VILLAR

Plaintiff contends that the ALJ failed to give proper reasons for excluding limitations assessed by one of plaintiff's treating physicians, Dr. Romeo Villar. This alleged failure to either include or properly reject the treating physician's assessment, plaintiff argues, constitutes error.

Dr. Villar first examined plaintiff on February 28, 2002. [AR at 327.] He completed an undated Work Capacity Evaluation (Mental) (the "Evaluation") of plaintiff that was date stamped as received by plaintiff's counsel on May 13, 2002. [AR at 311-12.] In the Evaluation, Dr. Villar found plaintiff extremely limited in four categories, markedly limited in five categories, both markedly and extremely limited in one category, moderately limited in five categories, and slightly limited in one category of functioning.[3] [AR at 311-12.] Dr. Villar also opined that plaintiff's

---

[3] Specifically, Dr. Villar found that plaintiff had extreme limitations in her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. [AR at 311-12.] Dr. Villar found marked limitations in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; and be aware of normal hazards and take appropriate precautions. [Id.] With respect to plaintiff's ability to interact appropriately with the general public, Dr. Villar checked two boxes indicating both marked and extreme limitations. [AR at 311.] Dr. Villar found moderate limitations in plaintiff's ability to remember locations and work-like procedures, understand and remember very short and simple instructions, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, and ask simple questions or request assistance. [AR at 311-12.] Finally, Dr. Villar found a slight limitation in plaintiff's ability to carry out very short and

impairments did not last or cannot be expected to last at least 12 months. [AR at 312.] On January 25, 2004, Dr. Villar completed a Mental Disorder Questionnaire Form, in which he diagnosed plaintiff with major depression, with psychotic features. [AR at 323-27.] Dr. Villar further opined that plaintiff would not be able to adapt to work situations and that her condition was chronic. [AR at 326-27.]

The ALJ rejected the opinion of Dr. Villar because "State Agency Board Certified psychiatrists have repeatedly described [Dr. Villar] as an unreliable source whose reports also have a sameness asserting severe mental illness 'with no substantial basis.'" [AR at 18.] Instead, the ALJ relied on the assessments of Dr. Linda M. Smith, a consultative examiner. [AR at 19-20.] On March 5, 2004, Dr. Smith performed a psychiatric evaluation of plaintiff, wherein she found no evidence of plaintiff's claims, gave plaintiff a fair prognosis, and determined that she was not impaired in her ability to work. [AR at 338-45.] On October 21, 2004, Dr. Smith performed another psychiatric evaluation, wherein she suspected that plaintiff was malingering, found no evidence of an objective basis for her complaints, gave her a fair prognosis, and concluded that plaintiff was not impaired in her ability to work. [AR at 374-81.] In both examinations, Dr. Smith assessed plaintiff with a Global Assessment of Functioning score of 80.[4] In his decision, the ALJ fully agreed with Dr. Smith's conclusion that plaintiff is unlimited in her ability to perform basic work-related functions. [AR at 20.]

Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812

---

simple instructions. [AR at 311.]

[4] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), p. 32 (4th Ed. 2000). A GAF score of 71 to 80 indicates no more than slight impairment in areas such as social or occupational functioning. See DSM-IV, at p. 34.

F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)). Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted, the ALJ may reject it in favor of another physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993). Specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

Here, plaintiff contends that the ALJ failed to properly reject the assessments of Dr. Villar. The Court agrees with plaintiff. The ALJ gave only one reason for rejecting Dr. Villar's assessment that plaintiff had limitations in all categories: the State Agency psychiatrists have repeatedly described Dr. Villar as an unreliable source whose reports "have a sameness asserting severe mental illness" without substantial basis. [AR at 18.] In support of this statement, the ALJ cited to a State Agency psychiatrist's Consultation Request, which stated that Dr. Villar "has been known to provide similar narrative reports with no substantial basis." [AR at 347.] The State Agency physician cites no evidence to support this blanket assertion, and thus makes it impossible for plaintiff to respond and for the Court to determine if the ALJ's conclusion is based on substantial evidence. The ALJ made unsupported assertions about the probative value of Dr. Villar's assessment without showing evidence of any actual impropriety by this particular physician in this case. See Lester, 81 F.3d at 832 (quoting Ratto v. Secretary, Dept. of Health and Human Services, 839 F.Supp. 1415, 1426 (D.Or.1993) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.")). While Dr. Villar's Evaluation indicates that plaintiff's impairment did not last 12 months, his Mental Disorder Questionnaire Form completed two years later indicated that plaintiff's condition was chronic and that she would not be able to adapt to work situations. [AR at 312, 326-27.] Given the lack of evidence to support

the ALJ's assertion that Dr. Villar is an unreliable source, the Court finds that this reason is not sufficiently specific and legitimate.

Defendant contends that the ALJ was not required to give Dr. Villar's Evaluation heightened deference because of the check-off nature of the form. Joint Stip. at 9. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because it consisted of check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). This argument, however, does not account for Dr. Villar's assessment in the Mental Disorder Questionnaire, in which Dr. Villar wrote out all his responses, including his opinion that plaintiff would not be able to adapt to work situations and that her condition was chronic. [AR at 323-27.] Defendant also notes that plaintiff speculated that Dr. Villar "no doubt felt it too early in his relationship with his patient" in order to explain his opinion that plaintiff's impairment could not be expected to last more than 12 months. Joint Stip. at 5. Defendant deemed this explanation an admission that Dr. Villar did not have a longitudinal relationship with plaintiff. Joint Stip. at 9. Regardless of whether Dr. Villar had a longitudinal relationship with plaintiff when he completed the Evaluation in 2002, Dr. Villar developed such a relationship with plaintiff by 2004, when he completed the Mental Disorder Questionnaire. [See AR at 305-10.] Additionally, the ALJ failed to cite either of these grounds when rejecting Dr. Villar's assessments. As such, defendant's attempt to justify the ALJ's rejection of Dr. Villar's assessment *post hoc* is not sufficient to cure the error. See Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper *post hoc* explanations for such unexplained conclusions).

As the ALJ failed to give a specific and legitimate reason for rejecting the assessment of the treating physician, remand is warranted on this issue.

B.   **OPINION OF DR. WONG**

Plaintiff contends that the ALJ failed to consider the limitations assessed by Dr. Wong, another of plaintiff's treating physicians. This alleged failure to either include or properly reject the treating physician's assessment, plaintiff argues, constitutes error. As discussed below, the Court agrees.

On or about August 12, 2004, Dr. Wong completed a Medical Report form from the CalWORKs program. [AR at 364.] In the form, Dr. Wong diagnosed plaintiff with diabetes and psychosis. [Id.] Dr. Wong further opined that plaintiff was confused and weak and that she would require home care. [Id.] Dr. Wong stated that plaintiff's duration of incapacity would last until December 31, 2004. [Id.] In his decision, the ALJ does not clearly reject Dr. Wong's assessment. Rather, the ALJ states that Dr. Wong completed a "preprinted medical report form" stating that plaintiff was temporarily incapacitated until December 31, 2004, and that she was confused and weak, "although his office notes do not reflect these symptoms." [AR at 18.]

The ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings, especially when the opinion is in the form of a check-off report. Magallanes, 881 F.2d at 751; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings).

In this case, however, progress notes indicate that plaintiff saw Dr. Wong seven times between August 25, 2003, and July 9, 2004, for her diabetes. [AR at 366-73.] In six of the seven reports, plaintiff was described as tired and, in five of the reports, Dr. Wong noted that she had "sleeping problems." [AR at 366, 367, 368, 370, 372, 373.] Given the likelihood that sleeping problems and fatigue are likely to lead to confusion and weakness, the Court finds the ALJ's statement that the progress reports do not reflect these symptoms is not supported by substantial evidence. [AR at 18.] As such, remand is warranted on this issue.

### C.  OPINION OF DR. KIKANI

Plaintiff contends that the ALJ failed to consider the limitations assessed by Dr. Kikani, a consultative examiner who completed a psychiatric evaluation of plaintiff.  On July 25, 2002, Dr. Kikani examined plaintiff and diagnosed her as follows: "rule out posttraumatic stress disorder, delayed type" and "rule out major depressive disorder with possible psychotic features."  [AR at 210-13.]  Dr. Kikani also assessed plaintiff with a GAF score of 48.[5]  [AR at 212.]  In his decision, the ALJ rejected Dr. Kikani's assessment on the grounds that Dr. Kikani is "not Board certified in anything," his reports have "a monotonous similarity" with other reports that he writes, the severity of the symptoms reported by him do not correspond with his diagnoses, and the State Agency psychiatrists "routinely ignore the exaggerations in [his] reports."  [AR at 18.]   Plaintiff contends that the grounds cited by the ALJ for rejecting Dr. Kikani's assessments lack merit, and the alleged failure to properly reject Dr. Kikani's assessment constitutes error.  As discussed below, the Court agrees.

An ALJ is not bound by an examining medical expert's opinion, and he may reject or discredit such an opinion.  Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).  Where no evidence contradicts the examining physician's opinion, the ALJ must provide "clear and convincing" reasons to reject the opinion.  See Lester, 81 F.3d at 830 ("As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician.").  If medical evidence in the record contradicts the examining physician's opinion, as in the instant case, the ALJ must still provide "specific and legitimate" reasons to reject his opinion.  See id.; see also Andrews, 53 F.3d at 1042.  Furthermore, the ALJ possesses the sole discretion to resolve conflicts between conflicting medical evidence.  Andrews, 53 F.3d at 1041.

Here, the ALJ rejected Dr. Kikani's opinion in favor of Dr. Smith, who found evidence of malingering and rendered no diagnosis or psychiatric work-related limitations.  [AR at 19.]  While

---

[5] A rating of 41-50 on the GAF scale indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  See DSM-IV, at 34.

the ALJ appears to reject Dr. Kikani's opinion, in part, on the basis that he is "not Board certified in anything," the Court notes that Dr. Smith, whose opinion he relies on, is also not Board certified. [AR at 18, 345.] The ALJ also noted the similarities in Dr. Kikani's reports, as well as his alleged reputation for exaggeration. [AR at 18.] Specifically, the ALJ observed, "His reports have a monotonous similarity, every report he writes that I have read asserts that the patient complained of helplessness, hopelessness, despair, isolation, hallucinations, as if any of those complaints came from a non-English speaking, uneducated Cambodian." [Id.] As with Dr. Villar, the Court rejects this reason, irrespective of its accuracy and the ALJ's failure to consider whether plaintiff used these terms herself, the terms were provided by the interpreter, or Dr. Kikani provided these terms himself based on plaintiff's description of her symptoms. The ALJ's statement is unsubstantiated, and thus not susceptible to challenge by plaintiff. Finally, the ALJ contends that Dr. Kikani's diagnostic impressions of "rule outs" do not correspond with the physician's "laundry list of symptoms which would justify confinement in a mental hospital." [Id.] Indeed, Dr. Kikani diagnosed plaintiff with rule out posttraumatic stress disorder and rule out major depressive disorder with possible psychotic features, while assessing her with a GAF score indicating serious impairment. [AR at 212.] Courts, however, acknowledge that the practice of psychiatry is not an exact science and that a psychiatrist has wide discretion to exercise his or her judgment. Pawlyk v. Wood, 248 F.3d 815, 823 (9th Cir. 2001) (quoting Ake v. Oklahoma, 470 U.S. 68, 81 (1985)). Given the imprecise nature of the discipline, the Court finds that the ALJ erred in rejecting Dr. Kikani's assessment based on his rule out diagnoses. The reasons cited by the ALJ for rejecting Dr. Kikani's assessment do not withstand scrutiny.

      The ALJ failed to cite a single specific and legitimate reason for rejecting Dr. Kikani's opinion in favor of Dr. Smith's conclusions. As such, remand is warranted on this issue.[6]

---

[6] Plaintiff also contends that the ALJ erred in determining that plaintiff did not suffer from a severe condition. As the assessments of Dr. Villar, Dr. Wong and Dr. Kikani may affect the ALJ's determination with respect to the severity of plaintiff's mental impairment, and the Court is ordering remand on whether the ALJ properly evaluated the physicians' opinions, the Court will not address the severity issue at this time. Rather, this issue should be re-evaluated on remand.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly evaluate the assessments of Dr. Villar, Dr. Wong and Dr. Kikani, and then reevaluate the severity of plaintiff's impairment in light of the physicians' assessments. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: August ____, 2007

                                                PAUL L. ABRAMS
                                  UNITED STATES MAGISTRATE JUDGE